[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 19, 2010
JOHN LEY
ACTING CLERK

No. 09-12812
Non-Argument Calendar

_____

D. C. Docket No. 08-60999-CV-WPD

CARL SHELL,

Plaintiff-Appellant,

versus

DAVID FOULKES,

Defendant-Appellee,

MONICA FOULKES,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 19, 2010)

Before EDMONDSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Carl Shell appeals the district court's order dismissing his 42 U.S.C. § 1983 civil rights complaint. After review we affirm.

## I. BACKGROUND

### A. Shell's Complaint

On June 30, 2008, Shell filed this pro se § 1983 action against Foulkes alleging that Foulkes deprived him of a vested property interest by terminating his lease without good cause. According to exhibits attached to Shell's complaint, Shell entered into a one-year lease with Foulkes to rent a unit that was subsidized by the Section 8 tenant-based assistance rental certificate program from March 1, 1998 until February 28, 1999. The lease provided that it would automatically renew each year. Under the Section 8 certificate program, the owner of the rental unit enters into a housing assistance contract with the local housing authority, and the housing authority pays housing assistance payments to the unit owner. The housing authority must approve the lease between the Section 8 tenant and the unit owner.

An addendum to Shell's lease laid out the Section 8 requirements. Among other things, the lease could be terminated by either the unit owner or the tenant. The grounds upon which the unit owner could terminate the lease included, inter

alia, "[v]iolation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the contract unit and the premises," and "[o]ther good cause." Other good cause included "[a] business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, desire to rent the unit at a higher rental)." However, it is expressly provided in the addendum that nonpayment of the housing assistance payment by the housing authority was not grounds for termination of the tenancy. The unit owner was permitted to evict a tenant from the unit by instituting a court action.

In a letter dated April 29, 2004, Foulkes notified Shell that the lease would not be renewed because Foulkes intended to make renovations to the apartment. Foulkes gave Shell sixty days to vacate the unit. Foulkes sent a copy of the letter to the local housing authority, the Hollywood Authority ("HHA"). On July 20, 2004, when Shell failed to vacate the premises after the 60 days expired, Foulkes gave Shell a three-day notice to either pay rent or vacate the premises. Foulkes sent a copy of this notice to the HHA.

When Shell neither paid nor vacated, Foulkes filed a complaint for tenant eviction in Broward County Court. On August 3, 2004, the Broward County Court ruled in Foulkes's favor, and Shell was evicted on August 19, 2004.

On September 23, 2004, the HHA notified Shell by letter that his Section 8 housing assistance benefits were terminated, pursuant to 24 C.F.R. § 982.552(b), which requires that assistance be terminated if the tenant has been "evicted from housing assisted under the program for serious violations of the lease." The HHA letter explained that Shell's eviction was "based upon [his] refusal to vacate the premises after the landlord terminated the lease as well as other lease violations."

On December 15, 2004, a hearing officer upheld the HHA's decision to terminate housing assistance benefits. Specifically, the hearing officer found that, after owner Foulkes gave Shell and the HHA the sixty-day notice of lease termination to do renovations on the unit, Shell requested a housing assistance payment to lease a new unit. However, Shell looked at only one unit and continued to live in Foulkes's apartment beyond the sixty days. Foulkes had Shell evicted for nonpayment of rent. The HHA paid benefits until the sixty-day period expired on July 1, 2004. The hearing officer concluded that Shell had "failed to show why he could not find a new unit from May to June[,] [l]eaving the Landlord to file for eviction," and that the eviction required mandatory termination of assistance under 24 C.F.R. § 982.552(b).

In his complaint, Shell alleged that Foulkes's later three-day notice nullified the earlier sixty-day notice, so Foulkes actually evicted him for non-payment of

4

rent, which was not "good cause" under the lease. Thus, Shell alleged that Foulkes's unlawful eviction caused the HHA to terminate his Section 8 benefits. Shell demanded $1 million in damages.

## B.    District Court Proceedings

On September 29, 2008, the district court granted Shell's motion to proceed in forma pauperis. On the same day, the district court also issued an order directing Shell to show cause why his complaint should not be dismissed for lack of subject matter jurisdiction, pointing out that it did not appear on the face of the complaint that Foulkes had "acted under color of state law." Shell responded that a private landlord terminating a lease without good cause was state action, and, alternatively, that he need not allege state action because he had alleged a constitutional deprivation of a vested property interest.

On November 25, 2008, landlord Foulkes, also pro se, filed an answer alleging that, after Shell refused to renew his lease in 2004, his lease expired and Foulkes issued a sixty-day notice to vacate the unit so Foulkes could do renovations. Shell did not vacate the unit and was evicted. The HHA gave Shell a voucher to find a new place to live, but he refused to do so. Subsequently, the HHA terminated Shell's Section 8 benefits because he had been evicted after refusing to vacate the premises. Foulkes also alleged that Shell already had filed

5

two civil actions against Foulkes for wrongful termination of the lease, that these actions had terminated in his favor, and that Shell was harassing him.

During the course of the proceedings, the district court permitted Shell to file an amended complaint and a second amended complaint, the purpose of which was to add Foulkes's wife, Monica Foulkes, as a defendant. Later, the district court dismissed the claim against Monica Foulkes for failure to state a claim and as barred by the statute of limitations. Shell does not appeal her dismissal.

On April 9, 2009, Foulkes filed a "Plea for Rule in Favor of Defendant," arguing that Shell's claims were barred by res judicata. The district court construed Foulkes's motion as a motion for summary judgment and gave Shell notice of his obligation to respond. Shell filed a response opposing summary judgment on res judicata grounds.

On April 27, 2009, the district court dismissed Shell's claims against Foulkes on two grounds. First, the district court concluded that Shell's § 1983 claims were barred by res judicata because Shell already had sought such relief in previous state court proceedings. Second, the district court sua sponte dismissed Shell's action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). Specifically, the district court found that Shell failed to allege how Foulkes acted under color of state law, as required for claims arising under § 1983. The district

6

court denied Foulkes's motion for reconsideration. Foulkes filed this appeal.

## II. DISCUSSION

When a litigant is granted in forma pauperis status, 28 U.S.C. § 1915 serves an important gate-keeping function by requiring the district court to sua sponte dismiss an action that fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). However, the district court may not dismiss an in forma pauperis complaint pursuant to § 1915(e)(2)(B)(ii) without allowing leave to amend when required by Federal Rule Civil Procedure 15. Brown v. Johnson, 387 F.3d 1344, 1348 (11th Cir. 2004) (reversing district court's denial of motion to amend complaint filed before responsive pleading served).[1]

Under Rule 15(a), the plaintiff may amend a complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a)(1) (2008).[2] Once the defendant has served a responsive pleading, amendment may be made only by leave of the district court or the consent of the defendant. Fed. R. Civ. P. 15(a)(2) (2008). Leave to amend should be freely given "when justice so requires." Id. However, the district court "is not required sua sponte to grant leave

---

[1]We review de novo a district court's sua sponte dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), taking the allegations in the complaint as true. Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

[2]The most recent amendments to Rule 15 went into effect on December 1, 2009 and, thus, do not apply.

to amend" when a plaintiff has not moved to amend. <u>Burger King Corp. v.</u> <u>Weaver</u>, 169 F.3d 1310, 1318 (11th Cir. 1999).

Shell's argument that he should have been given an opportunity to amend his complaint before the district court dismissed it pursuant to § 1915 is without merit. Because Foulkes had already answered Shell's complaint, Shell had no right to amend as a matter of course. <u>See</u> Fed. R. Civ. P. 15(a)(1) & (2). The district court put Shell on notice of his deficient pleading when it issued the show cause order directing Shell to address his failure to allege state action. Shell's response was: (1) that his allegations were sufficient to show state action; or (2) that he need not allege state action. Although Shell amended his complaint twice after the show cause order, he did not seek leave to add allegations of state action.

Furthermore, the district court did not err by dismissing Shell's § 1983 action for failure to state a claim. Private conduct is not actionable under § 1983; rather, to state a claim for relief, the alleged deprivation of a constitutional right must occur "under color of state law." <u>See</u> <u>Focus on the Family v. Pinellas</u> <u>Suncoast Transit Auth.</u>, 344 F.3d 1263, 1277 (11th Cir. 2003). State action is not established merely because a private entity receives government funding or is subject to extensive government regulation. <u>See, e.g.</u>, <u>San Francisco Arts &</u> <u>Athletics, Inc. v. United States Olympic Comm.</u>, 483 U.S. 522, 542-47, 107 S. Ct.

2971, 2984-87 (1987); Blum v. Yaretsky, 457 U.S. 991, 1003-11, 102 S. Ct. 2777, 2785-89 (1982). However, state action can be shown where "the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." Focus on the Family, 344 F.3d at 1277 (brackets and quotation marks omitted). This "nexus" test is only satisfied "when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum, 457 U.S. at 1004, 102 S. Ct. at 2786.

Here, Shell's complaint alleged that Foulkes wrongfully terminated his lease for failure to pay rent and then evicted him. However, Shell's complaint did not allege that the HHA played any role in the termination of Shell's lease or Shell's eviction, much less a pervasive role such that it could be said the State was responsible for Shell's eviction. Shell's complaint did not allege that the HHA approved the lease termination, issued or approved the notice to vacate, or authorized or initiated the eviction. Cf. Jeffries v. Georgia Residential Fin. Auth., 678 F.2d 919, 924-25 (11th Cir. 1982) (involving a different Section 8 program in which the state housing authority authorized the eviction and issued the notice to vacate and the landlord could not complete the eviction without the housing authority's approval). Notably, the regulations governing the Section 8 rental assistance certificate program, under which Shell leased Foulkes's apartment, do

9

not give the local housing authority this kind of responsibility. Rather, the decisions to terminate the tenancy and evict the tenant are left to the discretion of the unit owner. See 24 C.F.R. § 982.310(h)(1) (providing that the owner "may take or not take the action in accordance with the owner's standards for eviction").

Further, according to Shell's complaint, the HHA merely terminated Shell's Section 8 benefits after Foulkes terminated the lease and evicted Shell, and Shell did not find new Section 8 housing in a timely fashion. Given that Shell's complaint alleged only private action by his landlord and not state action, the district court properly dismissed the complaint for failure to state a § 1983 claim.[3]

**AFFIRMED.**

---

[3]Because we affirm the district court's dismissal for failure to state a claim, we do not address Shell's challenge to the district court's dismissal on res judicata grounds.