[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15920
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-20939-JLK


DOUGLAS DAUGHTRY,

Plaintiff - Appellant,

versus

JENNY G. LLC.,
GUILLERMO J. GONZALEZ,
XYZ EMPLOYER(S),
XYZ SHIP OWNER(S),
F/V PRINCE OF TIDES,
her engines, boilers, tackle, equipment,
apparel, appurtenances, etc., in rem,

Defendants - Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(August 9, 2017)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Douglas Daughtry brought a Jones Act claim and claims under general maritime law against Guillermo Gonzalez and others after he was injured aboard the fishing vessel Prince of Tides.  Gonzalez moved for summary judgment arguing that Gonzalez was neither Daughtry's employer nor the owner of the vessel and was therefore not subject to suit under the Jones Act or general maritime law.  Daughtry opposed the motion.  Although he acknowledged that he was at least nominally employed by Jenny G, LLC, he claimed that Gonzalez was also liable as Daughtry's employer under the "borrowed servant" doctrine, or, alternatively, that the court should disregard the corporate form and hold Gonzalez personally liable as the true owner of the vessel and Daughtry's employer because he was improperly using Jenny G, LLC, as a shield from liability.  The district court granted Gonzalez's motion for summary judgment,[1] determining that no genuine issue of material fact existed as to whether Gonzalez was Daughtry's employer or as to whether the evidence supported piercing the corporate veil. Daughtry appealed the order, arguing that documents relating to the sale of the Prince of Tides and the dissolution of Jenny G, LLC, were sufficient to raise a jury

---

[1] The order granting summary judgment in favor of Gonzalez was interlocutory, but we nonetheless have jurisdiction under 28 U.S.C. § 1292(a)(3), which provides jurisdiction over appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases . . . ."

2

question as to Gonzalez's status as an employer and as owner of the vessel.  After careful review, we affirm.

The facts, for purposes of summary judgment, are these.  Gonzalez is the owner and manager of Jenny G, LLC.  On April 9, 2010, Jenny G, LLC, purchased the shipping vessel, Prince of Tides.[2]  On March 15, 2012, the Prince of Tides departed from Fort Pierce on a fishing trip with Daughtry and two other crew members on board.  While at sea, Daughtry fell on a slippery floor and broke his leg.  The ship returned to Fort Pierce two days later and Daughtry was taken to the hospital.  Nonetheless, as a result of complications from the injury, Daughtry's leg was amputated.  On August 1, 2013, Jenny G, LLC, sold the Prince of Tides to Big Eye Tuna and Sword, LLC.  On September 26, 2014, Jenny G, LLC, was administratively dissolved.  On March 3, 2015, Daughtry sued Gonzalez, Jenny G, LLC, and the Prince of Tides in rem, and the district court ultimately granted Gonzalez's motion for summary judgment.

We review a grant of summary judgment de novo, applying the same standard as the district court.  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003).  In so doing, we "view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 342 (11th

---

[2] In October 2012, the Prince of Tides was renamed Swordfin.  To avoid confusion, this opinion will refer to the vessel as the Prince of Tides.

Cir. 2012) (quotation omitted).    Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of presenting "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1272 (11th Cir. 2003) (quotation omitted).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Pursuant to the Merchant Marine Act of 1920, also known as the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."  46 U.S.C. § 30104.  But the cause of action is dependent on the employment relationship, so it may be maintained only if Gonzalez was Daughtry's employer.  Hurst v. Pilings & Structures, Inc., 896 F.2d 504, 505 (11th Cir. 1990).  When "the employee contends that one who did not sign his checks was in fact his employer, the employee must prove the employment relationship."    Guidry v. S. Louisiana

4

Contractors, Inc., 614 F.2d 447, 454–55 (5th Cir. 1980).[3] To determine a seaman's employer we look to traditional indicia of the employer-employee relationship: who pays the seaman, who engages the seaman, who directs his work. See id. at 455; Baker v. Raymond Int'l, Inc., 656 F.2d 173, 177 (5th Cir. 1981).

Daughtry attempts to establish that Gonzalez was his Jones Act employer in two ways. First, he invokes the borrowed servant doctrine. Under the borrowed servant doctrine, "[a] borrowing employer may become vicariously liable even without becoming an employer generally if the borrowing employer assumes control over the acts of the employee and is directing him at the time when liability arises." Guidry, 614 F.2d at 455. For example, where an employee is hired and paid by the general contractor but performs his work under the direction of a subcontractor, we consider both the general and the sub to be Jones Act employers and allow the seaman to sue both. Baker, 656 F.2d at 177-78. To determine whether the doctrine applies, courts focus on who has the ability to control the seamen's work. See Gaudet v. Exxon Corp., 562 F.2d 351, 355 (5th Cir. 1977).

But here, Daughtry has identified no facts that suggest that he was under the direct control of Gonzalez. The record reflects that he and his fellow crew members were retained by and paid by Jenny G, LLC, and that Daughtry was

---

[3] Fifth Circuit cases decided before October 1, 1981 are binding precedent for the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

under the direction of the captain -- also a Jenny G, LLC, employee -- when he was injured. This is not a situation where "the contractual or operational relationship between those who direct a seaman's work results in his being on the payroll of one company and obeying the behest of another." Baker, 656 F.2d at 178. Daughtry does not dispute that he was on Jenny G's payroll and provides no evidence that Gonzalez was present or directing his work in any way at the time of his injury. Accordingly, the undisputed record establishes that the borrowed servant doctrine has no application here.

Daughtry also argues that he should be allowed to pierce the corporate veil because Gonzalez used Jenny G, LLC, as a shield from liability. To determine whether to disregard the corporate form in an admiralty case, we apply federal common law. See id. at 179. "Ordinarily, a creditor has recourse only against the corporate entity incurring the liability, not against parent corporations, stockholders, or other parties connected with the entity" but "[u]nder exceptional circumstances" we may disregard the corporate form where the principal uses the corporation to perpetrate a fraud on investors or "use[d] a closed corporation as his personal business conduit." Id. "To justify the extraordinary step of holding the dominant party liable, the jury must find that this control amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions

6

solely to achieve the purposes of the [principal]." Id. at 181 (quotations omitted); see also Talen's Landing, Inc. v. M/V Venture, II, 656 F.2d 1157, 1160 (5th Cir. 1981) (affirming piercing the corporate veil where three corporations, one of which was always undercapitalized, operated out of the same office, maintained unclear lines of which employee was employed or paid by which corporations, which assets were owned by each corporation, and engaged in extensive undocumented inter-corporate loan practices).

Daughtry comes nowhere close to meeting this high bar. First, he argues that Gonzalez sold the vessel in his own name rather than the corporation's name. But that's not correct. The document he points to is a purchase and sale agreement of stock in a corporation, the assets of which allegedly included the vessel. Nowhere does it say that Gonzalez personally owned the Prince of Tides. By contrast, the bills of sale filed with the Coast Guard quite clearly show Jenny G, LLC, as the owner of the vessel during the relevant period, with Gonzalez signing each document in his capacity as managing member of the corporation. Daughtry also suggests that the timing of the sale of the vessel evinced intent to fraudulently avoid liability for his injury. But Daughtry's own timeline belies this assertion. According to Daughtry, Gonzalez signed a purchase and sale agreement for assets including the Prince of Tides in June 2013. But it was not until the next month that Daughtry's counsel provided written notice Daughtry's injury. We don't see how

completing a sale already begun before notice of the claim shows any sort of fraudulent intent on the behalf of Gonzalez.

Moreover, the documents submitted by Gonzalez reflect that Jenny G, LLC, purchased the vessel and sold the vessel in its own name. The corporation also paid the wages to the crewmembers working on the Prince of Tides, and the crewmembers submitted affidavits stating that they were working for the corporation during the time that Daughtry was injured. As we have said, speculation and conjecture cannot create a genuine issue of material fact. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). Because of the high bar for disregarding the corporate form, there is no genuine dispute of fact concerning whether Gonzalez disregarded the corporate form, and no reasonable jury could conclude that Daughtry has met his burden. Thus, the district court did not err in granting summary judgment on the Jones Act claim. See Anderson, 477 U.S. at 252.

Daughtry's general maritime claims similarly depend on finding that Gonzalez owned the vessel individually. See Baker, 656 F.2d at 181–82. But again, there is no evidence that Gonzalez personally owned the vessel nor is there any genuine dispute of material fact concerning whether we should disregard the corporate form. Accordingly, for these same reasons, the district court properly granted summary judgment on these claims.

8

**AFFIRMED**.