**BB IN TECHNOLOGY CO., LTD., Plaintiff,**

v.

**JAF, LLC, Aerospace Engineering Group USA, Inc., and Allan Jiron, Defendants.**

No. 06–22592–CIV–UNGARO.

United States District Court, S.D. Florida.

March 30, 2007.

John C. Lynch, M. Evans McMillion, Jason E. Manning, Troutman Sanders LLP, Norfolk, VA, Counsel to Plaintiff BB in Technology Co. Ltd.

Holly R. Skolnick, Ricardo A. Gonzalez, Greenberg Traurig, P.A., Miami, FL, Local Counsel to Plaintiff BB in Technology Co. Ltd.

Neil Bayer, Esquire, Sarnoff & Bayer, Coconut Grove, FL, Counsel to Defendants JAF, LLC, Aerospace Engineering Group USA, Inc. and Allan Jiron.

### ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT AND COMBINED MOTION TO STRIKE

UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Amended Complaint and Alternative Motion for More Definite Statement and Combined Motion to Strike, filed February 6, 2007. (D.E.24.) Plaintiff filed its response on February 21, 2007. (D.E.29.) Defendants have not filed a reply. The matter is ripe for disposition.

THE COURT has considered the motion and the pertinent portions of the record and is otherwise fully advised in the premises.

By way of background, this is an action arising out of an agreement-allegedly entered between Plaintiff BB In Technology Co. ("BIT") and Defendant JAF, LLC ("JAF")-to purchase two Boeing 737–200 aircraft for $7,000,000.00 (the "Contract"), and the false and fraudulent statements Defendants JAF, Aerospace, and Allan Jiron allegedly made to induce BIT to enter into the

Contract and agree to its subsequent amendments. (Am.Compl.¶ 1.) Plaintiff has brought a claim for breach of contract against JAF (Count I), and claims for fraudulent inducement (Count II), and negligent misrepresentation (Count III) against JAF, Aerospace, and Allan Jiron. (Am.Compl.¶ 3.) Plaintiff seeks to recover actual damages, punitive damages, incidental damages, interest, and attorneys' fees. (Am. Compl. ¶ 4.)

## FACTS

The Court recites the following facts taken from Plaintiff's amended complaint and accepted as true for the purpose of deciding Defendants' motion to dismiss. Plaintiff is a shareholder of TransGlobal Airways Corp. ("TransGlobal") and the designated principal entity in the Contract to purchase two B737–200 aircrafts. (Am.Compl.¶ 5.) TransGlobal is in the business of international air cargo transportation, and in early 2005, TransGlobal's business growth necessitated the purchase of additional aircraft-specifically B737–200 aircrafts-for its air cargo operations from the Philippines to several Asian countries. (Am.Compl.¶ 5.) Edgar Lim is the President of TransGlobal and BIT. (Am.Compl.¶ 5.)

Aerospace, a Florida corporation, is "a conglomerate of several related corporations including Summit Aerospace, Innovative Technologies, Avionics International, Aerospace Engineering Europe, and Air Operations." (Am.Compl.¶ 6.) Aerospace was represented by Jiron and Manuel De Dios, who served as its agents at all relevant times. (Am. Compl.¶ 6.) JAF, a Florida limited liability corporation, is a shell entity created by Aerospace and Jiron specifically for the transaction giving rise to this lawsuit. (Am. Compl.¶ 7.) JAF was represented by Jiron and De Dios, who served as its agents at all relevant times. (Compl.¶ 7.) Jiron is the Vice President of Aerospace and the Vice–President and co-owner of JAF. (Compl.¶ 8.) Jiron acted as the authorized agent of Aerospace and JAF at all relevant times. (Compl.¶ 8.)

Plaintiff agreed to purchase two 737–220 aircraft from JAF and it entered into a Memorandum of Agreement, dated July 21, 2005 ("MOA") and three subsequent amendments, the first dated September 19, 2005 ("First Amendment"), the second dated September 30, 2005 ("Second Amendment"), and the third dated December 20, 2005 ("Third Amendment"). (Am. Compl. ¶ 12 & Exs. A, B, C.) Plaintiff characterizes the MOA and the three amendments thereto as constituting the Contract between it and JAF. (Am. Compl.¶ 12.) Plaintiff alleges that "JAF admitted that it failed to perform its obligations under the Contract and it memorialized that admission when it signed the Undertaking, dated May 4, 2006," in which JAF "promised to pay BIT liquidated damages of $2,200 for each day after February 10, 2006 that JAF failed to deliver the second aircraft." (Am. Compl.¶ 13.)

According to Plaintiff, "Aerospace offered to supply TransGlobal and/or BIT with one 737–200 airplane," and to "convey the offer, Aerospace sent Jiron, its Vice President, to the Philippines to meet with Edgar Lim, President of BIT and TransGlobal." (Am. Compl.¶ 14.) Plaintiff alleges that "to close the deal, Aerospace and Jiron invited Lim to inspect its facilities," and "[d]uring that May 2005 visit, Jiron showed Lim Aerospace's repair facilities," and Jiron represented to Lim and BIT that "Aerospace had multiple sources for the acquisition of the B737–200 aircraft and that Aerospace's repair and refurbishing facilities would ensure that the aircraft met TransGlobal's specifications." (Am.Compl.¶¶ 15–16.) Plaintiff claims that "[t]hese representations were falsely and knowingly made to induce BIT into signing the Contract." (Am.Compl.¶ 16.)

Jiron later "proposed that BIT purchase two aircrafts instead of one," and he assured Lim that "buying two planes simultaneously would provide interchangeable functionality and ensure continuity of operations." (Am. Compl.¶ 18.) Plaintiff claims that, "[i]nduced by Aerospace and Jiron's false representations and, in reliance thereon," the parties "finalized their agreement by signing the MOA ... on July 21, 2005," and that JAF, a shell entity created by Aerospace and Jiron, was the Seller and BIT the Buyer for the sale of two B737–200 cargo aircrafts, No. 20536 and No. 20575. (Am. Compl. ¶ 19 & Ex. A.) The MOA promised delivery of No. 20536 on August 25, 2005, and No. 20575 on

September 11, 2005. (Am.Compl.¶ 20.) According to Plaintiff, "BIT informed JAF, Aerospace, and Jiron that it was critical that JAF deliver the aircrafts on time." (Am. Compl.¶ 20.)

Plaintiff alleges that JAF missed both the August and the September delivery deadlines designated in the July 21, 2005 agreement, and that subsequently, Jiron told BIT that "JAF would deliver the aircrafts without further delay." (Am.Compl.¶ 21.) Plaintiff alleges that "[i]n reliance on Jiron's false representations of immediate delivery," BIT and JAF executed the First Amendment to the MOA on September 19, 2005, pursuant to which Lim and Jiron "agreed to extend the closing of the aircraft purchase to on or before December 1, 2005." (Am. Compl. ¶ 21 & Ex. B.) According to Plaintiff, BIT paid in full for both aircraft. (Am. Compl.¶¶ 22–24.) However, despite BIT's performance of its obligations under the Contract, JAF failed to deliver the first aircraft on time and failed to deliver the second aircraft all together. (Am.Compl.¶ 25.) Plaintiff alleges that Jiron told Lim that the first aircraft would be delivered soon and that he had to substitute another plane for the second aircraft, No. 20575. (Am. Compl.¶ 26.) Jiron told Lim that "[i]n lieu of No. 20575 ... Aerospance and JAF would deliver one of two alternative aircraft (either No. 21738 or No. 20917) at BIT's choice." (Am.Compl.¶ 26.) Plaintiff alleges that "Jiron represented that No. 21738 had already been paid for and secured by JAF and Aerospace," but that "[t]hese representations were false and designed to induce BIT to enter into a third amendment." (Am. Compl.¶ 27.)

Plaintiff alleges that on December 20, 2005, "induced by Jiron's fraudulent statements, BIT entered into the Third Amendment with JAF." (Am. Compl. ¶ 28 & Ex. D.) According to Plaintiff, the parties agreed that: (1) JAF would deliver the first aircraft, No. 20536, by December 30, 2005; (2) JAF would deliver either the No. 21738 by February 10, 2006 or the No. 20917 by March 10, 2006; and (3) JAF would pay BIT a $2,200 a day penalty for each day after February 10, 2006 that it failed to deliver the aircraft.

(Am.Compl.¶ 28.) Just a few days after signing the Third Amendment, Jiron informed Lim that the No. 21738 was not available, and based on Jiron's representations and the terms of the Third Amendment, Lim agreed to accept aircraft No. 20917 as the second aircraft instead of No. 21738. (Am. Compl.¶ 29.)

The first aircraft, No. 20536, was delivered the first week of January 2006, and Plaintiff is not seeking damages for the additional one week delay in the delivery of the first plane; however, according to Plaintiff, "Jiron continued to misrepresent the location, ownership, custody, possession, status and even the whereabouts of the second aircraft, No. 20917." (Am.Compl.¶ 30.) Plaintiff alleges that in early February 2006, Jiron informed Lim that there had been another change regarding the second aircraft, but "Jiron once again promised 'a firm delivery date' of February 15, 2006, five days after the February 10, 2006 delivery date specified in the Third Amendment." (Am. Compl. ¶ 31 & Ex. G.) According to Plaintiff, therefore, the $2,200 per day penalty for failure to deliver the second aircraft was triggered and started accruing from February 11, 2006. (Am. Compl.¶ 31.) Plaintiff claims that "JAF's continued delays caused significant damage to BIT's air cargo business in Asia," and that "Lim informed Jiron that the delays were causing 'a lot of complications both in government bureaucracy and our client' in China and Taiwan and were 'a very serious problem.'" (Am. Compl. ¶ 32 & Ex. H.)

Plaintiff claims that Jiron "repeatedly lied about the whereabouts of the second aircraft and admitted that JAF would pay the $2,200 per day penalties." (Am. Compl. ¶ 33 & Ex. I.) On April 26, 2006, Plaintiff alleges that "De Dios contacted Noel Aguilera, the Chief Executive Officer of Aerospace and JAF, to enlist his help in getting Jiron and JAF to perform." (Am.Compl.¶ 34.) Plaintiff claims that "De Dios emphasized BIT's urgent need for the second aircraft," and that "Aguilera promised to give the transaction his personal attention." (Am. Compl. ¶ 34 & Ex. J.) Plaintiff alleges that in "May 2006, Jiron again traveled to the Philippines to assure BIT that JAF would deliver on their obli-

gations," and that "[a]s part of that effort, on May 4, 2006, Jiron executed an Undertaking acknowledging that JAF had failed to meet the delivery date of February 10, 2006 for aircraft No. 21738 and committing to deliver the second aircraft no later than May 24, 2006 subject to the same $2,200 per day penalty thereafter." (Am. Compl. ¶ 35 & Ex. E.) Plaintiff alleges that the second aircraft was not delivered by May 24, 2006, and that on May 25, 2006 Jiron contacted Lim and apologized for failing to fulfill JAF's contractual obligations. (Am.Compl.¶ 36.) On June 5, 2006, "Jiron told Lim that Aerospace was negotiating with three different sources to obtain an interim aircraft for BIT." (Am. Compl. ¶ 36 & Ex. K.)

On June 27, 2006, Jiron sent an email message to Lim, detailing "the specifications of an interim second aircraft that he stated would arrive on July 24, 2006" and these specifications were for "*aircraft No. 20575, which was the second aircraft originally identified in the MOA.*" (Am.Compl.¶ 38.) Plaintiff alleges that JAF, Jiron and Aerospace "knowingly and intentionally misrepresented the status and whereabouts of the various options for the second aircraft, and falsely and fraudulently represented their ability to deliver it," but that, "[i]n fact, JAF, Aerospace, and Jiron never owned or controlled the various aircrafts they identified as available for delivery as the second aircraft." (Am.Compl.¶ 39.) On July 7, 2006, BIT sent a demand letter to JAF, and Plaintiff "offered JAF one final chance to preserve the parties' relationship by delivering the promised interim aircraft no later than July 31, 2006." (Am.Compl.¶ 40.) On July 27, 2006, De Dios "apologized to Lim for JAF's failure to deliver the second aircraft," and he "admitted that JAF's failure to deliver the second aircraft as agreed had damaged BIT." (Am.Compl.¶ 41.) According to Plaintiff, "[t]o date, JAF has still not delivered the second aircraft or even an interim aircraft." (Am.Compl.¶ 41.)

On July 28, 2006, "BIT wrote JAF another demand letter," giving JAF "the opportunity to do the right thing by refunding the entire $3,100,000 purchase price for the second aircraft, along with $145,552 in interest and $314,600 for the $2,200 per day penalty." (Am.Compl.¶ 42.) Plaintiff alleges that Nos. 20575, 20738, and 20917 were never in the ownership custody or control of Aerospace or JAF, and "may not have ever actually existed." (Am.Compl.¶ 43.) Plaintiff claims that "JAF, Aerospace, and Jiron intentionally and continuously made false representations," and that these "false and fraudulent statements knowingly induced BIT to enter into the Contract." (Am.Compl.¶ 43.) Plaintiff has "lost income and incurred significant costs due to JAF, Aerospace, and Jiron's conduct." (Am.Compl.¶ 44.)

## LEGAL STANDARD

On a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). Under the Federal Rules of Civil Procedure, a claimant does not need to "set out in detail the facts upon which he bases his claim." *Gibson,* 355 U.S. at 47, 78 S.Ct. 99. Rather, "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.; see* Fed.R.Civ.P. 8. In ruling on a motion to dismiss, the court may not look beyond the four corners of the complaint. *Milburn,* 734 F.2d at 765 ("Consideration of matters beyond the complaint is improper in the context of a motion to dismiss but proper in the context of a motion for summary judgment."). However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and if a defendant attaches such documents to the motion to dismiss, the court may consider them without converting the motion into one for summary judgment. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). On a motion to dismiss, "the facts stated in [plaintiff's] complaint and all rea-

sonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). The Eleventh Circuit has stated that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir.2003).

### *ANALYSIS*

In the motion to dismiss, Defendant JAF argues that the amended complaint should be dismissed pursuant to Rule 12(b)(7) of the Rules of Federal Procedure for failure to join TransGlobal as a party pursuant to Rule 19. (MTD ¶ 2.A.) Defendants Aerospace and Jiron seek dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (MTD ¶ 2.B.) In the alternative, Aerospace and Jiron request that the Court require Plaintiff to set forth the causes of action against them with greater specificity pursuant to Rule 12(e). (MTD ¶ 2.B.) Additionally, all Defendants ask the Court, pursuant to Rule 12(f), to strike the reference to "illegal conduct" found in paragraph four of the amended complaint, and to strike Plaintiff's claim for punitive damages for failure to comply with procedural requirements under the Florida Statutes. (MTD. ¶ 2.C.) In response, Plaintiff argues that Defendants' motion should be denied because according to Plaintiff: (1) TransGlobal is not a necessary or indispensable party, and complete relief can be granted with the present parties; (2) Plaintiff BIT has stated claims for fraud in the inducement (Count II) and negligent misrepresentation (Count III) with sufficient particularity to comply with Rule 9(b), and a more definite statement is not warranted; (3) the allegation of "illegal conduct" is not immaterial or scandalous, and BIT has complied with the requirements for pleading punitive damages in federal court. (Resp. to MTD at 2.)

### *JAF's Motion to Dismiss Pursuant to Rule 12(b)(7)*

JAF seeks dismissal of all three claims against pursuant to Rule 12(b)(7)[1] of the Rules of Federal Procedure for failure to join TransGlobal as a party pursuant to Rule 19.[2] (MTD ¶ 3.) According to JAF, TransGlobal is an indispensable party which is evidenced by many references to TransGlobal in the originally filed complaint. (MTD ¶ 5.) JAF also claims that there is a strategic or ulterior motive behind the omission of TransGlobal as a plaintiff in the amended complaint. (MTD ¶ 5.)

---

1. Rule 12(b)(7) of the Federal Rules of Civil procedure provides that the defense of "failure to join a party under Rule 19" may be made by motion. Fed.R.Civ.P. 12(b)(7).

2. Rule 19 of the Federal Rules of Civil Procedure provides:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19.

Rule 19 states a two-part test for determining whether a party is indispensable. *See Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1279 (11th Cir.2003). First, the court must decide under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. *Id.* at 1280. If the person should be joined but cannot be, then the court must determine whether, applying the factors enumerated in Rule 19(b), the litigation may continue despite the party's absence. *Id.* (citing *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,* 669 F.2d 667, 669 (11th Cir.1982)). The Eleventh Circuit has stated that "[i]n making the first determination-i.e., whether the party in question 'should be joined,' 'pragmatic concerns, especially the effect on the parties and the litigation,' control." *Id.* (citations omitted).

JAF argues that TransGlobal has been placed on notice of JAF's intention to off-set against BIT's claims for damages in this action monies which TransGlobal allegedly owes to JAF for parts valued at approximately one million dollars, which JAF delivered to TransGlobal at BIT's direction. (MTD ¶ 6.) JAF further argues that "a portion of the damages claimed by BIT herein involve crew wages, maintenance costs and insurance costs incurred by TransGlobal." (MTD ¶ 7.) And, according to JAF, if TransGlobal is not a party to the action Defendants may not be able to obtain critical discovery which can only be obtained from TransGlobal. (MTD ¶ 7.) Finally, JAF argues that Edgar Lim (TransGlobal's president) and other TransGlobal personnel are critical witnesses whose testimony cannot be compelled unless TransGlobal is joined as a party. (MTD ¶ 8.)

▇ The Court finds that despite JAF's arguments to the contrary, TransGlobal is not a party that "should be joined" under Rule 19(a). JAF has not explained how TransGlobal's absence would deprive those persons already parties to the action from being accorded complete relief, nor has JAF demonstrated that TransGlobal "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [TransGlobal's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a).

The Contract out of which this litigation arises was entered between BIT and JAF. BIT is a shareholder of TransGlobal and the designated principal entity in the Contract to purchase two B737–200 aircrafts needed to accommodate TransGlobal's growth in its business of international air cargo transportation. TransGlobal is not a party to the Contract, and it cannot maintain a breach of contract action against JAF. BIT may be afforded complete relief on its claims for breach of contract, fraudulent inducement, and negligent misrepresentation without making TransGlobal a party to this action-even despite the fact that JAF allegedly intends to offset against BIT's damages claim monies allegedly owed by TransGlobal to JAF. In other words, the fact that JAF may have a claim against TransGlobal will not prejudice the rights of those already parties to the action.

Moreover, the fact that BIT has claimed damages, a portion of which allegedly "involve crew wages, maintenance costs and insurance costs incurred by TransGlobal," does not make TransGlobal's presence as a party necessary to accord those persons already parties to the action complete relief. Even if JAF's alleged breach of the Contract between it and BIT has caused BIT damages as a result of costs incurred by TransGlobal, BIT still may be afforded complete relief on its claim, despite TransGlobal's absence. Finally, with respect to JAF's concerns that if TransGlobal is not a party to the action Defendants may not be able to obtain critical discovery which JAF alleges can only be obtained from TransGlobal and Edgar Lim, the Court concludes that JAF has not adequately demonstrated how TransGlobal's absence as a party will limit the parties' ability to obtain such discovery. Furthermore, the amended complaint alleges that the president of BIT, Edgar Lim, also is the president of TransGlobal. Thus, Edgar Lim's testimony can be compelled.

Accordingly, for the foregoing reasons, the Court finds that TransGlobal is not a necessary party under Rule 19(a), and BIT's claims against JAF should not be dismissed for failure to join TransGlobal as a party.

**Aerospace and Jiron's Alternative Arguments for Dismissal Pursuant to Rule 12(b)(6) or for a More Definite Statement Pursuant to Rule 12(e)**

Defendants Aerospace and Jiron argue that Plaintiff's claims against them for fraudulent inducement and negligent misrepresentation must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Aerospace and Jiron argue that in its amended complaint, Plaintiff utilizes Jiron's status as an officer of Aerospace "not only to circumvent and defeat Jiron's clear status as the agent of a disclosed principal (JAF) but also to draw a non-party [Aerospace] into the proceedings." (MTD ¶ 10.) Aerospace and Jiron further argue that the amended complaint is "wholly silent" with respect to specific fraudulent or negligent misrepresentations by Aerospace or Jiron (in anything other than his representative capacity as the agent of JAF). (MTD ¶ 14.) In other words, Aerospace and Jiron assert that the amended complaint is "nothing more than a thinly veiled attempt to pierce the corporate veil of JAF by personally naming Jiron as a party Defendant," and that "[e]qually transparent is the absence of specific allegations of fraud and/or negligent misrepresentations by Aerospace which would lay a factual predicate for the allegations against them." (MTD ¶¶ 15–16.)

■ As a preliminary matter, the Court notes that Plaintiff does not need to pierce the corporate veil to recover against Jiron individually for the torts of fraudulent inducement and negligent misrepresentation. Under Florida law, "if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort." *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,* 125 F.Supp.2d 1093, 1104 (S.D.Fla.2000) (Florida law) (citing *First Fin. USA, Inc. v. Steinger,* 760 So.2d 996, 997–98 (Fla. 4th DCA 2000)) (holding that the president of the corporation was not shielded from liability for fraudulent conduct; *Scutieri v. Miller,* 605 So.2d 972, 973 (Fla. 3d DCA 1992) (holding that corporate officers could be liable for defamation even though the claim against the corporation had been settled)). In other words, "officers, directors, and agents of a corporation can be personally liable for committing torts when the tort is committed within the scope of their corporate employment." *Id.* at 1105.

■ Moreover, the Court finds that Plaintiff in its amended complaint has stated with sufficient particularity the circumstances constituting fraud in its allegations against Jiron and Aerospace for the torts of fraudulent inducement and negligent misrepresentation. Rule 9(b) of the Federal Rules of Civil Procedure provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of the Rule is to "alert[ ] defendants to the 'precise misconduct with which they are charged' and protect[ ] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks,* 116 F.3d at 1370–71 (citations omitted). The Eleventh Circuit has explained that Rule 9(b) "must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Id.* at 1371 (quoting *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y.1989)). The *Brooks* court explained that Rule 9(b) "may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence' of their fraud." *Id.* (citations omitted).

By way of illustration, Plaintiff has made the following allegations in its amended complaint: Jiron represented Aerospace and at all relevant times served as Aerospace's agent (Am.Compl.¶ 6); Jiron represented JAF and at all relevant times served as JAF's agent (Am.Compl.¶ 7); JAF is a shell entity created by Aerospace and Jiron specifically for the transaction giving rise to this litigation (Am.Compl.¶ 7); Jiron is the Vice President of Aerospace and the Vice President and co-owner of JAF, and he acted as the authorized agent of Aerospace and JAF at all relevant times (Am.Compl.¶ 8); Jiron represented to Lim and BIT that Aerospace had multiple sources for the acquisition of the B737–200 aircraft and that Aerospace's repair and refurbishing facilities would ensure that the aircraft met BIT's specification, and he made these representations falsely and knowingly to induce Plaintiff to sign the agreement for the purchase of the subject aircraft (Am.Compl.¶ 16); Jiron told Lim that Aerospace had acquired a second B737–200, identified by Serial No. 20575 ("No. 20757"), which met BIT's specifications, and Jiron stated that the aircraft was currently on the Ivory Coast and would be delivered, according to specification, on September 11, 2005 (Am.Compl.¶ 18); Plaintiff was induced by Aerospace and Jiron's false representations and, in reliance thereon, the parties finalized their agreement by signing the MOA on July 21, 2005 (Am.Compl.¶ 19); After missing both the August and September delivery deadlines designated in the MOA, Jiron repeatedly told BIT that JAF would deliver the aircrafts without further delay, and in reliance on Jiron's false representations of immediate delivery, BIT and JAF agreed to extend the closing of the aircraft purchase (Am. Compl. ¶ 21 & Ex. B); Jiron represented that No. 21738 had already been paid for and secured by JAF and Aerospace, but that these representations were false and designed to induce BIT to enter into a third amendment (Am.Compl.¶ 27); and on December 20, 2005, induced by Jiron's fraudu-

lent statements, BIT entered into the Third Amendment with JAF. (Am. Compl. ¶ 28 & Ex. D.)

For the foregoing reasons, the Court finds that Plaintiff has pled its allegations of fraud and negligent misrepresentation against Aerospace and Jiron with sufficient particularity with regard to what statements or oral representations were made, the time and place of the statements or representations, the content of and the persons responsible for making same, and what Defendants "obtained as a consequence" of their fraud. *See Brooks*, 116 F.3d at 1371. Accordingly, the claims for fraud and negligent misrepresentation against Aerospace and Jiron should not be dismissed.

■ In the alternative Aerospace and Jiron move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[3] Federal Courts disfavor motions for a more definite statement, in view of the liberal pleading and discovery requirements set forth in the Federal Rules of Civil Procedure. *See Hobbs v. BH Cars, Inc.*, 2004 WL 1242838, *2 (S.D.Fla. June 4, 2004) (citing *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089, 1101–2 (S.D.Fla.1977)). Pleadings provide notice, whereas discovery procedures provide "the intricacies of the issues and evidence for trial." *Id.* (citing *Betancourt v. Marine Cargo Mgmt.*, 930 F.Supp. 606, 608 (S.D.Fla.1996)). Thus, a motion for a more definite statement will be granted only if " 'the pleading is so vague or ambiguous that the opposing party cannot respond in good faith or without prejudice to himself.' " *Id.* (quoting *Adelphia Cable Partners, L.P. v. E & A Beepers Corp.*, 188 F.R.D. 662, 665 (S.D.Fla.1999)). Plaintiff's amended complaint and claims against Aerospace and Jiron for fraudulent inducement and negligent misrepresentation are not so vague and ambiguous that Defendants cannot respond in good faith or without prejudice. Accordingly, the motion for a more definite statement must be denied.

---

**3.** Rule 12(e) of the Federal Rules of Civil Procedure provides in relevant part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired."

***Defendants' Motion to Strike Pursuant to Rule 12(f)***

 Defendants move to strike (1) the reference to "illegal conduct" in the amended complaint and (2) the claim for punitive damages. (MTD ¶¶ 18–22.) Rule 12(f) provides that the Court can order that "any redundant, immaterial, impertinent, or scandalous matter" be stricken from a pleading. Fed. R.Civ.P. 12(f). However, "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1347 (M.D.Fla.1999) (quoting *Seibel v. Society Lease,* 969 F.Supp. 713, 715 (M.D.Fla.1997)); *see also Augustus v. Bd. of Pub. Instruction,* 306 F.2d 862 (5th Cir.1962) (holding that motions to strike are disfavored and rarely granted).

The Court agrees with Plaintiff that the term "illegal conduct" is not scandalous in this context. Committing fraud is illegal conduct, and the term describes the acts and causes of action relevant in this case. Therefore, the Court finds that Defendants' motion to strike the reference to illegal conduct in paragraph four of the amended complaint should be denied. The Court also finds that Defendants' motion to strike Plaintiff's claim for punitive damages should be denied. Defendants argue that the claim for punitive damages violates Florida Statutes section 768.72, which bars a punitive damages claim "unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Fla. Stat. § 768.72. However, the Eleventh Circuit "has rejected Florida pleading requirements for punitive damages in diversity cases, holding that Florida Statute[s] § 768.72 conflicts with Rule 8(a)(3)" of the Federal Rules of Civil Procedure.[4] *Larson v. Correct Craft, Inc.*, 2005 WL 1902438, *4 (M.D.Fla. Aug.8, 2005) (citing *Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1297–99 (11th Cir.1999), *vacated in part and reheard on*

other grounds, 204 F.3d 1069 (11th Cir. 2000)). Therefore, the Court finds that Plaintiff's claim for punitive damages should not be stricken. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant JAF's Motion to Dismiss is DENIED. It is further

ORDERED AND ADJUDGED that Defendants Aerospace and Jiron's Motion to Dismiss or Alternative Motion for a More Definite Statement is DENIED. It is further

ORDERED AND ADJUDGED that Defendants' Motion to Strike is DENIED.

---

4. Rule 8(a)(3) of the Rules of Civil Procedure provides: "A pleading which sets forth a claim for relief ... shall contain ... a demand for judgment for the relief the pleader seeks." Fed. R.Civ.P. 8(a)(3).